MARY J. TYGAR

*v.*

SAMUEL A. COOK et ux.

[Decided October 14th, 1910.]

1. In a suit by a grantor to set aside a deed reserving a life estate, evidence *held* not to show that the grantee, taking also a lease of the premises, was to support the grantor and pay the interest on the mortgage on the premises if the lease was terminated by the grantor, and the failure to insert such an agreement in the deed or to make a breach thereof a matter of defeasance did not justify a cancellation of the deed.

2. The grantor in a deed reserving a life estate leased the land to the grantee for a year. It was understood that the lease would be renewed from year to year if the grantor desired. One of the objects of leasing to the grantee was to secure to the grantor support for life as a member of the grantee's family, and the right of the grantor to a renewal of the lease with the covenant of support from year to year for her life and at her sole option was an essential part of the agreement, which should have been inserted in the deed, and, under the agreement as inserted in the deed, the grantee could abandon the lease at the end of the year.— *Held*, that the failure to insert the agreement in the deed was a fatal defect, entitling the grantor to its cancellation.

3. The court on canceling a deed of land at the suit of the grantor will relieve the grantee from liability on mortgages executed after the execution of the deed pursuant to an agreement between the parties, and will impose other equitable terms.

Heard on bill, answer, replication and proofs in open court.

*Mr. Charlton A. Reed,* for the complainant.

*Mr. Eugene V. Cooper,* for the defendants.

EMERY, V. C.

The main object of the bill in this case is to set aside a deed made by the complainant, Mrs. Tygar, to the defendant Samuel A. Cook, on August 16th, 1906, for lands on Lake Hopatcong, Morris county. This deed for the expressed consideration of

"the sum of one dollar and other valuable considerations" conveyed to defendant in fee two lots, reserving, however, to the grantor the full and absolute control of the premises and the rents and profits during her life. The defendant was the son of a cousin of the complainant, but the conveyance of the reversion was not, and was not intended purely as a gift, but was made under the following circumstances: Complainant was the owner of a tract of land on the lake, containing five lots, and on which she had carried on the business of a summer hotel or boarding house, known as the Van Orden Cottage. Several buildings had been erected on the tract, including the main building or boarding house, which had been destroyed by fire a year or more before the deed was made. After the fire, complainant, who was an elderly woman, nearly seventy years of age, desired to rebuild and restore the house in order to have the business continued. She did not desire herself to carry on the business, but did wish to continue to live on the premises, being, as her letters to defendant and others show, much attached to the place and unwilling to sell it and go to live elsewhere. A year or more previous to the deed to defendant she had made an arrangement with another person to take the place and rebuild or aid her in rebuilding the house, she living with them, but this arrangement was not satisfactory and came to an end in the latter part of the year 1905. In the early part of 1906, complainant, in letters to the defendant, suggested his taking the place. One letter, dated April 28th, 1906, asks defendant's assistance in procuring a loan for her from a building and loan association to rebuild, suggests that if complainant cannot get along, perhaps defendant might like to come and live at the place if he could make it pay, and requests defendant and his wife (who lived in Dover) to come up to see her as she would like to have a talk with them. In another letter, of May 10th, 1906, she requests Cook to get for her from Mr. Neighbour, a lawyer of Dover, her will and a deed, and in this letter says she hopes to rent the place soon, so that she will have less work. Complainant about this time consulted personally with defendant in reference to a lawyer to draft another will, and Mr. Eugene Cooper, of Dover, was recommended by defendant for the purpose, and defendant,

at complainant's request, spoke to Mr. Cooper and received information as to his charges for the service, which was communicated to complainant in a letter dated June 25th, 1906. By appointment with complainant, defendant took Mr. Cooper to complainant's residence at the lake and left him in consultation with complainant. The result of this interview was not that of drafting another will, but that a proposition was discussed between complainant and Mr. Cooper, as her counsel, apparently, for the defendant to aid complainant in rebuilding the cottage and then with his wife to take the place permanently and carry on the boarding house business, the complainant living with him as a member of his family during her life. For the purpose of carrying out this general plan, the complainant was to convey to defendant the boarding house lots, reserving a life right, and both were to join in procuring a loan on the premises for rebuilding, and also paying some small debts of complainant. This proposition substantially was made to the defendant after the interview between complainant and Mr. Cooper, but defendant declined to give an answer until after consultation with his wife, and it was not until after an interview between defendant and his wife with the complainant at her residence that the proposal was accepted. This interview was on the Sunday following July 26th, 1906, the date of defendant's letter, which still held off decision, and made an appointment for a full talk with complainant. As the result of this interview on Sunday, defendant decided to accept the proposal. Mr. Cooper was not present at this interview. The drawing of the necessary papers was left to Mr. Cooper, and so far as appears he had the sole responsibility of protecting the interests of both parties. He now appears as the defendant's solicitor, and still continuing as his solicitor, is called as his witness against complainant. Mrs. Tygar, having had difficulty in getting possession of the premises from the parties with whom she had previously made an arrangement for rebuilding and leasing, was, as Mr. Cooper says, insistent that she should be protected in the future, and he therefore adopted the plan of executing two papers, one the deed conveying the lands, reserving the life right, and the other, an agreement defining the other terms of the bargain, which in-

cluded a lease for a year only. This second paper, executed at the same time, recites the execution of the deed and then states its object, as follows:

"And whereas the object of said conveyance is that said Cook would lease the premises of said Tygar and occupy the same with his family and manage the same, and the said Tygar would live with him and his family and all work for the interest of each other and live together as one family, but fearing their intentions may not prove as hoped they bind themselves as follows, to wit," &c.

Then follow the covenants by which Cook agrees to give Mrs. Tygar a suitable burial at her death, to join with his wife and Mrs. Tygar in erecting the building on the premises for a dwelling and boarding house, and to mortgage the premises to obtain the money for building, and also $458.53 to pay a note of Mrs. Tygar's. The deed covered only two of the five lots included in the lease, and it was agreed that if Cook built on the lands not covered by the deed, he should, at the death of Mrs. Tygar, have the right to remove the buildings within five months thereafter. The agreement then provides that in consideration of these and subsequent covenants, Mrs. Tygar leased the five lots for one year from March 1st, 1907, Cook

"to board, lodge, support and maintain and also care for in sickness the said Mary J. Tygar as one of his family, and pay her doctor bills and also to pay her the sum of $15 per month for her own use from March 1st, 1907, during the term hereof."

The lessee was also to pay the taxes against the property for 1907 and during the term, and the interest on encumbrances or liens and premiums on fire insurance policies and to keep the building insured, and in consideration of the premises agrees "to comply with and perform all the conditions and obligations resting on him as above mentioned for and during the term aforesaid." No other papers or documents were executed between the parties. The defendant, in the fall of 1906, gave up the business he was engaged in, removed to the premises with his family, aided and supervised the construction of the building and joined with complainant in the execution of mortgages to the amount of $5,383 to raise the necessary funds for rebuild-

ing and paying complainant's debts. In the spring and summer of 1907 the defendant carried on the boarding house business, complainant living with them.

Disputes arose, principally between complainant and Mrs. Cook, or her servants, and complainant conceiving that she was not fairly treated or properly cared for, dispossessed defendant by proceedings under the lease, taken before a justice of the peace after the parties had failed to agree on the terms of a new lease from March 1st, 1908. Complainant secured possession in May, 1908, and in October, 1908, filed this bill to set aside the deed. The allegations of the bill upon which the right or claim to set aside the deed is based, are substantially the following: That it was at Cook's suggestion and tender of assistance and rebuilding that the negotiations were commenced; that Cook procured Mr. Cooper as the attorney, and that Cooper suggested Cook as a proper person to superintend rebuilding the house and conducting the boarding house business and maintaining complainant; that thereupon negotiations with Cook were begun, as the result of which it was agreed that complainant was to convey to Cook the lands and premises, reserving a life right; that Cook and his wife with complainant were to execute the mortgages to raise money for the rebuilding which Cook was to superintend, and that a lease for one year was to be made. These provisions were those actually carried out, but it is alleged in the bill that the agreement between them also was that Cook would furnish a home with comfortable support and maintenance during her life, and that in case Cook failed to keep his agreement, or in case complainant became dissatisfied with Cook's conduct, complainant should have the right to have the lands reconveyed to her by Cook, and all his rights in the lands should cease if any of the terms of the agreement were not performed by Cook, or in case complainant became dissatisfied. These two provisions were not in fact included in either of the two papers signed, and as to this, the allegation of the bill is, that at the time of their execution, Cooper informed her that she was amply protected in her rights as agreed on between Cook and herself, and there were no further terms reduced to writing. As breaches of these agreements complainant alleges that Cook failed

to give her a home, that it was impossible for her to live with his family, that he failed to provide proper food, or a comfortable room, and that she was made sick by the abuse of Cook and his family and servants. He has also since his removal from the premises failed to pay interest on the mortgages or to provide for her support and maintenance. Complainant says that at the time of the execution of the deed, she believed that the agreement for the defeasance thereof made between her and Cook had been incorporated in the deed, but that she is now advised that this was not the case, but that by the deed Cook will on her death become the absolute owner of the premises in fee-simple, although he has failed to comply with his agreement; that these lands are practically her only means of support, and that she is unable to use them for her support while Cook's conveyance remains unrevoked. The defendants deny that there were any provisions or conditions agreed on between the parties other than those contained in the deed and agreement executed, or that Cook was to maintain complainant or keep down the interest and taxes if he was not in possession, and further, that the provisions of the deed and lease were fully explained to complainant who understood and was satisfied with them.

So far as relates to the specific charge in the bill, that at the time of the execution of the papers, complainant believed that a provision for defeasance of all Cook's rights under the deed contained in the papers, the evidence fails to support the charge. Complainant herself is her only witness on this point, and by her own evidence it appears that at the time of the preparation of the deed and agreement she insisted to Cooper (not in Cook's presence) that the agreement for support and for surrendering Cook's right should be put in the deed, but that Mr. Cooper said that complainant had full control, and if the Cooks did not treat her right they would have to surrender all up, not merely surrender possession. For defendant, Cook and Cooper are sworn, and their evidence is, that it was agreed that the lease should be for a year in order that Mrs. Tygar might terminate it if she chose, and that there was no agreement for her support by Cook, or payment of interest or taxes, if Cook did not remain in possession, neither was there any agreement that on terminating the

lease, Cook's rights under the deed were to cease or that he was to reconvey. Cooper also swears that the contingency of complainant's support, in case of termination of the lease, was talked over between the complainant and himself, and the complainant said that if the house were rebuilt, she could support herself from the rents, and that it was not understood that Cook was to support her if he did not remain in the house.

After giving due consideration to the fact that the unprofessional and equivocal position of Mr. Cooper in acting as the solicitor for the defendant whose principal witness he is, seriously affects the credibility of his evidence, I reach the conclusion that the weight of evidence is against complainant's claim that Cook was to support her and keep down the interest, if his lease was terminated by complainant, and that the complainant's case on the pleadings and proofs, so far as it depends on the failure to insert such agreement or to make a breach thereof as matter of defeasance of the conveyance, has not been made out. But it was claimed at the hearing that on the proofs complainant was entitled to a rescission of the deed under the bill, upon the ground that the evidence showed that complainant's interest had not been protected by the insertion in the deed and agreement of other terms that were agreed on between the parties and were necessary for her protection, and that under the papers as drawn and executed, the interests of complainant were disregarded and benefits or rights given to which Cook was not entitled and which were inequitable. The important particular of the agreement finally reached by the parties, which was not put in the deed or agreement as drawn and which would seem to have been necessary for the grantor's protection in making an absolute conveyance of the reversion, was that the arrangement for leasing from year to year and for defendant's supporting complainant as a member of his family during the lease, was to be renewed from year to year as long as complainant chose, and was at her option only.

The recital in the agreement shows clearly that one of the objects of leasing to defendant was to secure complainant's support for her life, as a member of defendant's family, and the evidence of Cooper shows that the yearly lease was adopted with the under-

standing that it was expected to be renewed from year to year, if complainant desired.

There was no agreement or understanding whatever that the lease from year to year, instead of for Mrs. Tygar's life, was for defendant's benefit, or that he, after having received the conveyance of the reversion, had the option to abandon the premises and complainant's support with it, at the end of any year. The right to a renewal of the lease with the covenant for support from year to year during her life and at her sole option, were, as I conclude from the proofs (the recital in the agreement as well as the oral proofs), essential parts of the agreement between the parties which complainant was entitled to have inserted. No such provisions for renewal were inserted either in the deed or the agreement, and the lease as actually drawn gave to Cook as well as Mrs. Tygar the right to abandon the lease at the end of the year and without assigning any cause or reason whatever. That Cook having received the reversion in fee under an agreement .contemplating complainant's support and maintenance as a member of' his family during her life as long as she lived in the leased premises with him, should also have the option of leaving the premises at the end of the year's lease, would seem to be an unconscionable advantage, and one which should not have been secured to him by the papers executed for the purpose of carrying out the understanding and intention of the parties. His agreement for complainant's support is, under the lease as executed, limited to the term of the lease. If these provisions relating to complainant's support should have been contained in the deed or agreement executed, in order that one of the substantial considerations for conveying the reversion should be secured to complainant, then the failure to insert them was a fatal defect and entitled the complainant to relief.

In *White* v. *White* (*Vice-Chancellor Pitney, 1900*), *60 N. J. Eq.* (*15 Dick.*) *104, 115,* one of the reasons for setting aside a conveyance made by a father to his son, was that the agreement that the father was to retain the use of the property during his life was not inserted in the deed. And the fact that the father was allowed to remain in the property did not remedy the fatal defect of the omission in the deed. Nor in this case does the fact

that complainant dispossessed defendant cure the defect of omis-- sion from the deed or lease itself, for the material question on this point is whether the deed and agreement, as executed, express the full understanding of the parties as to the complainant's right to support for life; and the fact that the defendant, under the papers as executed, was not obliged to renew the lease except upon terms he agreed upon, gave him a position of substantial advantage, as to continuing complainant's support for life, which he was not entitled to under the agreement upon which the conveyance was made. The parties did in fact disagree on the terms of the new lease, and, under the papers as executed, the complainant's right to support then ceased.

I conclude that complainant's rights in reference to support during her life were not protected as they should have been by proper insertions in the deed or agreement, and that the papers were executed by her, under the mistaken assurance that her rights as agreed on were protected. The bill alleges that at the time of the execution of the agreement and deed, she was informed by Cooper that she was amply protected in her rights as agreed on between her and Cook, and the answer admits that "Cooper did explain to her and the said Cook that she was amply protected as agreed upon by her and the said Cook, and as expressed in the said terms and conditions of the said agreement of lease and deed." Her right to support during her life on the premises, by renewing the lease from year to year, if she chose, was a substantial part of the consideration agreed on for the conveyance of the reversion, and under the authority of *White* v. *White, supra,* the omission to insert it entitles complainant to a rescission of the deed and a reconveyance.

This must, however, be upon the terms that the complainant relieves the defendant from all liability upon the mortgages, and on settling decree, I will hear counsel as to whether any other equitable terms should be imposed.

The bill set up a further claim for accounting, but at the hearing this appeared to be without any foundation for decree.